{¶ 35} The majority's perfunctory disposition of the exception to immunity set forth at R.C. 2305.321(B)(2) reads that exception out of the statute. The exception clearly establishes that the various equine experts provided immunity may be liable, if they negligently misgauge the ability of an "equine activity participant" to engage in a particular activity, or manage a particular horse. The deposition of Ms. Hendrix establishes a genuine issue of material fact concerning whether Gavin's injuries resulted from an "inherent risk of an equine activity," R.C. 2305.321(A)(7)(a) and (b); or, whether it resulted from negligently putting a beginning rider on a pony insufficiently acclimated to its surroundings for such a rider to handle. If a fact finder *Page 13 
determined the latter to be the case, liability would attach to appellees herein pursuant to R.C. 2305.321(B)(2)(b).
 {¶ 36} Ohio's equine liability immunity law is merely one of many passed by various states. "* * * The underlying purpose of these statutes is to protect equine professionals from liability by eliminating the risk of lawsuits that arise out of the inherent dangers of horseback riding, while not exonerating horse owners from liability fornegligence.'" Gibson v. Donahue (2002), 148 Ohio App.3d 139, 146. (Citation omitted.) (Emphasis added.) The definition of "inherent risk of an equine activity" contained in the statute is broad — but the majority interprets it to be a whale, which swallows the R.C.2305.321(B)(2)(b) exception whole, like Jonah.
 {¶ 37} The first assignment of error should be upheld. I respectfully dissent.
 *Page 1